1  Jyoti Mittal, Bar No. 288084
   jmittal@littler.com
2  James Payer, Bar No. 292158
   jpayer@littler.com
3  Joy Cho, Bar No. 353177
   jcho@littler.com
4  LITTLER MENDELSON P.C.
   2049 Century Park East
5  5th Floor
   Los Angeles, California 90067.3107
6  Telephone:    310.553.0308
   Fax No.:       800.715.1330
7
   Attorneys for Defendant
8  BENSON INDUSTRIES, INC.

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12
   TYRESE LYONS, individually, and on behalf of    Case No.
13 all others similarly situated,
                                                   **NOTICE OF REMOVAL OF CIVIL**
14              Plaintiff,                          **ACTION TO FEDERAL COURT UNDER**
                                                   **28 U.S.C. SECTIONS 1332 AND 1441(b)**
15       v.

16 BENSON INDUSTRIES, INC., a corporation; and     Trial Date: TBD
   DOES I through 10, inclusive,                   Complaint Filed:   November 30, 2023
17                                                 San Francisco County Superior Court
                Defendants.                        Case No.  CGC-23-610746
18

19

20

21

22

23

24

25

26

27

28

LITTLER
MENDELSON P.C.
2049 Century Park
East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL
COURT

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF TYRESE LYONS, individually, and on behalf of all others similarly situated:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant BENSON INDUSTRIES, INC. (hereinafter referred to as "Benson" or "Defendant") removes the above-captioned from the Superior Court for the State of California, in and for the County of San Francisco to the United States District Court, Northern District of California. Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the San Francisco County Superior Court.

## I.    PROCEDURAL BACKGROUND

On November 30, 2023, Plaintiff Tyrese Lyons ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Francisco, which is captioned as follows: *Tyrese Lyons v. Benson Industries, Inc., a corporation; and Does 1 through 10, inclusive*, Case No. CGC-23-610746 ("Complaint" or "Compl."). The Complaint contains nine causes of action for (1) Failure to Pay Minimum Wage and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197) (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7); (5) Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); (6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802); (8) Failure to Produce Requested Employment Records (Cal. Lab. Code §§ 226 and 1198.5); (9) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.).

True and correct copies of the Summons and Complaint, Civil Case Cover Sheet, and Notice of Case Management Conference are attached to the supporting Declaration of Jyoti Mittal ["Mittal Decl."] as **Exhibit 1**. A true and correct copy of the Proof of Personal Service is attached to the Mittal Decl. as **Exhibit 2**. A true and correct copy of the Order Denying Complex Designation for Failure to

LITTLER
MENDELSON P.C.
2049 Century Park
East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

2

NOTICE OF REMOVAL TO FEDERAL COURT

File Application Requesting Designation is attached to the Mittal Decl. as **Exhibit 3**.

On or about February 6, 2024, the parties filed a Joint Stipulation and [Proposed] Order Regarding Extension of Time to Specially Appearing Defendant to Respond to Plaintiff's Complaint. A true and correct copy of the Joint Stipulation and Proposed Order is attached to the Mittal Decl. as **Exhibit 4**.

On or about February 9, 2024, the Court issued Order granting the Request for an Extension of Time for Specially Appearing Defendant to Respond to Plaintiff's Complaint. A true and correct copy of the Order Granting an Extension of Time for Specially Appearing Defendant to Respond to Plaintiff's Complaint is attached to the Mittal Decl. as **Exhibit 5**.

On or about February 15, 2024, Plaintiff served a Notice of Entry of Order/Notice of Ruling denying complex designation for failure to file application requesting designation. A true and correct copy of the Notice of Entry of Order is attached to the Mittal Decl. as **Exhibit 6**.

On or about March 7, 2024, Defendant filed an Answer to the Complaint in Superior Court of the State of California, County of San Francisco. A true and correct copy of Defendant's Answer is attached to the Mittal Decl. as **Exhibit 7**.

On or about April 16, 2024, Defendant filed a Notice of Related Cases. A true and correct copy of the Notice of Related Cases is attached to the Mittal Decl. as **Exhibit 8**.

On or about April 16, 2024, Defendant filed a Case Management Statement. Upon information and belief, Plaintiff also filed a Case Management Statement. True and correct copies of the Case Management Statements are attached to the Mittal Decl. as **Exhibit 9**.

On or about April 18, 2024, the Court continued the Case Management Conference to November 6, 2024. A true and correct copy of the Court's notice is attached to the Mittal Decl. as **Exhibit 10**.

On or about June 4, 2024, Plaintiff filed a Notice of Intent to File a First Amended Complaint. A true and correct copy of the Notice of Intent to File a First Amended Complaint is attached to the Mittal Decl. as **Exhibit 11**.

On or about June 27, 2024, Defendant filed a Notice of Related Cases. A true and correct copy of the Court's notice is attached to the Mittal Decl. as **Exhibit 12**.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

3

NOTICE OF REMOVAL TO FEDERAL COURT

1    On or about October 22, 2024, Defendant filed a Case Management Statement. Upon

2    information and belief, Plaintiff also filed a Case Management Statement. True and correct copies of

3    the Case Management Statements are attached to the Mittal Decl. as **Exhibit 13**.

4    On or about October 23, 2024, the Court continued the Case Management Conference

5    scheduled for November 6, 2024, to February 5, 2025. A true and correct copy of the Court's notice

6    is attached to the Mittal Decl. as **Exhibit 14**.

7    As of the date of this Notice of Removal, no other parties have been named or served with the

8    Summons and Complaint, to Defendant's knowledge, and no other process, pleadings, or orders

9    related to this case have been filed in the Superior Court of the State of California, County of San

10    Francisco other than **Exhibits 1-14**. A true and correct copy of the Court's docket is attached to the

11    Mittal Decl. as **Exhibit 15**.

12    **II.    REMOVAL JURISDICTION**

13    This Court has jurisdiction because a federal question exists under Section 301 of the Labor

14    Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an

15    employer and a labor organization representing employees in an industry affecting commerce as

16    defined in this [Act], or between any such labor organizations, may be brought in any district court of

17    the United States having jurisdiction of the parties, without respect to the amount in controversy or

18    without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter "Section 301").

19    Section 301 preemption and jurisdiction apply because the Complaint includes claims that can

20    only be brought as contractual claims under a collective bargaining agreement ("CBA"), because of

21    the application of several express CBA exemptions in the Labor Code and Industrial Welfare

22    Commission ("IWC") Wage Order 16. Section 301 also applies because Plaintiff asserts that he is

23    entitled to relief which is controlled by the CBA and makes claims the resolution of which require

24    interpretation of the CBA.

25    If any claims in the Complaint are not preempted, the entire action is still removable under 28

26    U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims

27    in the Complaint are sufficiently related to form part of the same case or controversy.

28

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

4

NOTICE OF REMOVAL TO FEDERAL COURT

1   **III.    REMOVAL PROCEDURE**

2       **A.      Venue Is Proper in This District.**

3           Plaintiff filed this action in the Superior Court of California, County of San Francisco.

4   Therefore, pursuant to 28 U.S.C. §§ 84(d), 1391, and 1441(a), venue properly lies in the United States

5   District Court for the Northern District of California.

6       **B.      This Removal Is Timely.**

7           This Notice of Removal is timely. 28 U.S.C. § 1446(b) provides two 30-day windows for

8   removing a case. Section 1446(b)(1) specifies that a defendant must remove "within 30 days after

9   receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth

10  the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If,

11  however, "the case stated by the initial pleading is not removable, a notice of removal may be filed

12  within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended

13  pleading, motion, order or other paper from which it may first be ascertained that the case is one which

14  is or has become removable." 28 U.S.C. § 1446(b)(3). In addition, the Ninth Circuit has held that a

15  defendant may remove "when it discovers, based on its own investigation, that a case is removable."

16  *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013). Thus, the two 30-day periods

17  set forth in section 1446(b) are not the exclusive periods for removal. *Id.* at 1125 ("We conclude that

18  §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on

19  the basis of its own information, provided that it has not run afoul of either of the thirty-day

20  deadlines."). In short, a case "may be removed at any time, provided that neither of the two thirty-day

21  periods under § 1446(b)(1) and (b)(3) has been triggered." *Id.* at 1126; *see also Rea v. Michaels Stores

22  Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading,

23  motion, order or other paper' does not reveal that the case is removable," a defendant, in effect, "may

24  remove at any time.").

25          To trigger the 30-day removal periods under § 1441(b), the grounds for removal must be

26  evident from the face of the pleadings. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir.

27  2005). That is, the determination of removability is based on the "four corners of the applicable

28  pleadings, not through subjective knowledge or a duty to make further inquiry." *Id*. If it is unclear

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

5                                    NOTICE OF REMOVAL TO FEDERAL
                                                      COURT

from the complaint whether the case is removable, the pleadings are considered "indeterminate," and the 30-day removal window is not triggered. *Id*. at 693. A "defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth*, *supra,* 720 F.3d at 1125. "Even the simplest of inquiries is not required....[D]efendants are not charged with *any* investigation, not even into their own records." *Stiren v. Lowes Home Ctrs., LLC*, 2019 U.S. Dist. LEXIS 74656, *709 (C.D. Cal. May 2, 2019). Accordingly, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth*, *supra,* 720 F.3d at 1125; *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

Here, Plaintiff's Complaint is clearly indeterminate. It does not assert that Plaintiff was a member of a Union or provide any information regarding the Collective Bargaining Agreement that governed his employment. Nor has Plaintiff filed or served any other "pleading, motion, order or other paper" in this matter that revealed on its face that this matter was removable. (*See Lainez v. Wilhelm, LLC*, 2024 U.S. Dist. LEXIS 173859 *3, 8-9 (N.D. Cal. Sep. 25, 2024). As Defendant remained free to conduct its own investigation and remove at any time, this removal is timely.

**C.    The Parties**

At relevant times, Benson Industries, Inc. has been a signatory of the District Council of Iron Workers of California and Vicinity ("Union") Collective Bargaining Agreements. (Strass Decl., ¶¶ 2-3.) Thus, at all relevant times, Benson and the Union have been parties to a CBA (*Id*.)

For the entirety of his employment from October 2022 to February 2023, Plaintiff was employed by Benson in a position in the bargaining unit represented by the Union. (*Id*. at ¶ 5-6.) A true and correct copy of the CBA in effect during Plaintiff's employment and applicable to Plaintiff's employment is attached to the Strass Decl. as **Exhibit A**. *See also* Defendant's Request for Judicial Notice ("RJN") at ¶ 1. The CBA is effective through December 31, 2024. (Strass Decl., ¶ 6.)

Defendant is an employer engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The Union is a labor organization under the NLRA and the LMRA. 29 U.S.C. §§ 152(5) and 185(a).

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

6

NOTICE OF REMOVAL TO FEDERAL COURT

1

### D.    The Failure To Reference The CBA, The LMRA, Or The Union Does Not Preclude Removal Because Plaintiff May Not "Artfully Plead" A Complaint To Conceal Its True Nature

2

3    The failure of Plaintiff's Complaint to reference the CBA, the Union, or the LMRA is not

4    relevant to the Section 301 preemption analysis. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th

5    Cir. 2019); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F.Supp.3d 743, 750 (S.D. Cal. 2021); *Mellon*

6    *v. Universal City Studios, LLC*, 2022 WL 4021692, 2 (C.D. Cal. Sept. 2, 2022); *Ayon v. Zero Waste*

7    *Sols., Inc.*, 2021 WL 4065716, 3 (E.D. Cal. Sept. 7, 2021). A plaintiff may not be permitted to "artfully

8    plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997

9    (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative

10    complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines,*

11    *Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska*

12    *Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009); *IBEW v. Hechler*, 481 U.S. 851 (1987) (state law tort

13    action "treated as Section 301 claim" by the Court); *Hyles v. Mensing*, 849 F. 2d 1213, 1217 (9th Cir.

14    1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive

15    federal law); *Olguin v. Inspiration Consol. Copper Co.*,740 F.2d 1468, 1472-74 (9th Cir. 1984)

16    (preemption affirmed despite attempt to plead around federal jurisdiction); *see Milne Emp. Ass'n v.*

17    *Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991).

18    The Court may properly look beyond the face of the Complaint to determine whether the claims

19    asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340

20    F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the

21    Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an

22    action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

23    An artfully pled state law claim is properly "recharacterized" as a federal claim under the

24    "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts

25    an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded

26    complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393

27    (1987). "A claim pleaded under state law that requires the interpretation of a collective bargaining

28    agreement is transformed by section 301 of the LMRA into a claim arising under federal law." *Risetto*

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

7

NOTICE OF REMOVAL TO FEDERAL COURT

1  *v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

2  **IV.    FACTUAL BACKGROUND**

3      **A.    Plaintiff's Employment**

4      Defendant Benson employed Plaintiff as an Iron Worker, Journeyman, Apprentice 4th period

5  from October 19, 2022 through February 28, 2023. (Compl., ¶ 7; Strass Decl., ¶ 5.) In this position,

6  and throughout his entire employment with Benson, Plaintiff was a member of a bargaining unit

7  represented by the Union. (Strass Decl., ¶¶ 5-6.) Therefore, Plaintiff's employment was governed by

8  the CBA.

9      Further, Plaintiff, like all other workers covered by the CBA, was employed in a construction

10  occupation. (*See* CBA, Strass Decl., Exhibit A, Section 3. Craft Jurisdiction, pp.3-7. [listing types of

11  construction work covered by the CBA].)

12      Plaintiff earned a base hourly rate of at least $36.51 per hour at all times during his employment

13  with Benson per the CBA and applicable wage scale Zone 1. (Strass Decl., ¶ 7. *See also* Exhibits A

14  and B.) During the entirety of his employment, Plaintiff was paid pursuant to the wage rates set forth

15  in the Journeyman wage scales for Zone 1. (*Id. See also* Exhibit **B,** pp. 19 and 25.)[1]

16      **B.    Relevant Collective Bargaining Agreement Provisions**

17      The term of the CBA in effect during Plaintiff's employment was July 1, 2020 to December

18  31, 2024, and continues "in full force and effect an additional year thereafter and shall remain in effect

19  from year to year thereafter unless notice is given in writing by either party to the other at least one

20  hundred twenty (120) days but not more than one hundred fifty (150) days prior to the expiration of

21  such contract year." (Strass Decl., ¶ 6; Exhibit A, p. 67.)

22      The CBA at issue is broad. Not only does it clearly address wages, hours, and working

23  conditions. The CBA specifically addresses meal breaks, rest breaks, overtime pay, reporting time

24  pay, hours of work, travel, and expenses. It further requires that statutory Labor Code claims including

25

---

26  [1] Pursuant to the CBA, wage rates were based on the geographic location of the work and the type of
27  trade. Prior to July 1, 2021, the wage rates were broken out in to two primary geographic areas – (1)
Bay Area Counties and (2) California and Nevada. The wage rates were further broken down by job
classification – (1) Fence Erectors and (2) Reinforcing, Structural, and Ornamental. Effective July 1,
28  2021, the wage rates were broken down further into five geographic "zones" representing counties
throughout California and the state of Nevada. (Strass Decl., ¶ 6, Exhibit A, pg. 23; Exhibit B.)

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL
COURT

claims for meal periods, rest breaks, overtime, minimum wage, waiting time penalties, expense reimbursements, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq. proceed through the CBA's grievance and arbitration procedures.

The provisions of the CBA relevant to this Removal include, but are not limited to, the following:

### 1.    **Wage Rates**[2]

As relevant to show that the CBA provides for 130% of minimum wages, and that Plaintiff's overtime claim is subject to the exemption under Labor Code section 514 and preempted by the CBA:

> **WAGE SCHEDULE, BAY AREA COUNTIES** – [Listing Journeyman and Apprentice wages ranging from $20.00 to $40.00 effective January 1, 2019. And listing future increases in July 1, 2019 and July 1, 2020.]

(Strass Decl., ¶ 6, Exhibit B.)

> **WAGE SCHEDULE, ZONES 1 and 2** – [Listing Journeyman and Apprentice wages ranging from $23.12 to $46.23 effective July 1, 2021. And listing future increases in January 1, 2022, January 1, 2023, June 1, 2023, and January 1, 2024.]

(Strass Decl., ¶ 6, Exhibit B.)

The wages applicable to Benson employees[3] were at all times greater than 130% of the relevant minimum wage:

| Year | Minimum Wage[4] | 130% of minimum wage | CBA lowest hourly wage rate |
|------|-----------------|----------------------|------------------------------|
| 2019 | $12.00 | $15.60 | $20.00 |

---

[2] At all relevant times, Benson employees were subject to the wage rates outlined in the geographic zones entitled "Bay Area Counties,", "Zone 1," and "Zone 2" for the Journeyman job classification. (Strass Decl. ¶¶ 6, 8, 9; Exhibit B, pp. 5, 9, 13-14, 19-20, 25-26, 31-32, 37-38**.)** Benson did not employ any individuals subject to the wage rates applicable to the "Fence Erector" job classification or geographic jurisdictions covered by "California and Nevada Counties" and Zones 3-5. (Strass Decl., ¶¶ 8-9, Exhibit A, pg. 23; Exhibit B.)

[3] At all relevant times, Benson employees were subject to the wage rates outlined in the geographic zones entitled "Bay Area Counties,", "Zone 1," and "Zone 2" for the Journeyman job classification. (Strass Decl., Exhibit B**,** pp. 5, 9, 13-14, 19-20, 25-26, 31-32, 37-38**.)**

[4] For 26 or more employees. (*See* RJN [listing minimum wage rates].)

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

| Year | Minimum Wage[4] | 130% of minimum wage | CBA lowest hourly wage rate |
|------|-----------------|----------------------|------------------------------|
| 2020 | $13.00 | $16.90 | $20.75 |
| 2021 | $14.00 | $18.20 | $21.25 |
| 2022 | $15.00 | $19.50 | $23.74 |
| 2023 | $15.50 | $20.15 | $24.94 |
| 2024 | $16.00 | $20.80 | $26.04 |

### 2.    Overtime

The CBA specifically calls for overtime premiums:

**Section 7. Overtime:**

Time and one-half shall be paid for the first two (2) hours worked in excess of eight (8) hours on any regular work day Monday through Friday. Time and one-half shall be paid for the first eight (8) hours worked on Saturday and double time shall be paid for all hours worked in excess of eight (8) hours. All other overtime worked, including Sundays and holidays, shall be paid at the double time rate. Overtime pay shall be computed by not less than half-hour increments...

(Strass Decl., ¶ 3, Exhibit A, pp. 30-31; *See also* Section 6-B-1, Hours of Work, pg. 18; Section 6-G, Holidays, pg. 22; Section 8, Pay Day, pg. 32-33; and Section 9-J, Show-Up Expense, pg. 36.)

### 3.    Working Hours

The CBA specifically calls for working hours:

**Section 6-A. Work Hours Per Day:**

**Hours of Work** - Eight (8) hours shall constitute a day's work from 5:00 a.m. to 5:00 p.m. from Monday through Friday inclusive. Noon hour may be curtailed by agreement with the workmen on the job and the individual employer or his representative. Change in starting time shall be made by mutual agreement between the individual employer and the Business Agent of the appropriate Local Union; except on jobs where the majority of the Building Trades craftsmen have established an earlier starting time for the job, in which case workmen covered under this Agreement will conform to the earlier time. Notification must be given to the Union.

On jobs where workmen covered by this Agreement are working with Building Trades craftsmen who are working a shorter work day or work week, they shall receive a full day's pay if their work is curtailed because of the other crafts leaving the job.

An individual employer may start the day shift earlier than 5:00 a.m., providing he notifies the ap-propriate Local Union of his intention to do so prior to making the change in starting time. An earlier starting time may be established by mutual con-sent between the Business Agent of the

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

appropriate Local Union and the individual employer.

By mutual agreement between the individual employer and the Business Agent/Manager of the appropriate Local Union or the District Council of Iron Workers, and with one week's notice, a four (4) day per week, ten (10) hour per day work shift may be established. The regular work week shall be from Monday through Thursday. Pay for each of these four (4) days shall be ten (10) hours at the straight time hourly rate.

All work in excess of ten (10) hours per day shall be paid at one and one-half (1½) times the straight time hourly rate for the first two (2) hours worked and double time shall be paid for all work in excess of twelve (12) hours Monday through Thursday, and Friday if Friday is worked as a makeup day….

(*Id.* at Exhibit A, pp. 16-18.)

### 4. <u>Meal and Rest Breaks</u>

The CBA calls for meal and rest breaks:

**Section 6-B-1. Works Hours Per Day:**

If workmen are required to work continuously for more than four and one-half (4 ½ ) hours or five (5) hours when the normal starting time is established before 8:00 a.m. without an opportunity for lunch during the period of a normal shift, they shall receive overtime pay for work after the four and one-half (4 ½ ) hours, (or five (5) hours) until opportunity to take time for lunch is afforded and shall thereafter be allowed a reasonable opportunity to eat lunch on the individual employer's time. (Example: 6:00 a.m. starting time - 5 hours; 7:00 a.m. starting time - 5 hours; 8:00 a.m. starting time – 4 ½ hours.)

(*Id.* at Exhibit A, pg. 18; *See also* Section 6-C, Hours of Work, pg. 19.)

**Section 6-B-2. Works Hours Per Day:**

**Rest Periods** - Every individual employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. Nothing in this provision shall prevent an individual employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes per rest time for every four (4) hours worked, or major fraction thereof. Rest periods shall take place at individual employer designated areas, which may include or be limited to the employee's immediate work area.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

Rest periods need not be authorized in limit-ed circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, the individual employer shall make up the missed rest period within the same work day or compensate the employee for the missed ten (10) minutes of rest time at his or her applicable rate of pay within the same pay period.

A rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

If an individual employer fails to authorize or permit an employee a rest period in accordance with the applicable provisions of this Section the individual employer shall pay the employee one (1) hour of pay at the employee's applicable rate of compensation for each work day that the rest period was not provided. Penalties for violation of this Section shall be in accordance with Wage Order No. 16 of the Industrial Welfare Commission as interpreted by the Department of Industrial Relations.

Nothing in this section confers any right or duty on the Department of Industrial Relations to resolve any dispute or assess any actual penalties for violations of this section. Any dispute regarding the provisions of this Section shall be subject to Section 28 Grievance Procedure of this Agreement.

(*Id.* at Exhibit A, pp. 18-19.)

### 5.    Timing and Method of Wage Payment

The CBA addresses wages, hours, and working conditions:

**Section 8. Pay Day**

The regular pay day shall be once a week on such day agreed upon between the individual employer and the appropriate Local Union. Wages shall be paid before quitting time on the job, in cash, by check or other legal tender. An electronic fund transfer or a no fee, no limit debit card may be offered by the individual employer. The method of payment must be authorized by the employee in writing and consistent with state laws. The employee has the right to revoke the method of payment at their discretion; provided, the employee delivers to the individual employer written notice of the change at least fifteen (15) calendar days prior to implementation. When requested by the Union, an individual employer will make arrangements with a local bank to cash the workmen's paycheck. Individual employers may withhold where necessary a reasonable amount of wages but not to exceed the

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

12

NOTICE OF REMOVAL TO FEDERAL COURT

provisions contained in the Labor Code of the State of California, or Nevada when applicable, to enable them to prepare the payroll. If pay day falls on a holiday, the workmen shall be paid the day preceding the holiday.

When workmen are laid off, or discharged, they shall be laid off or discharged at the site of construction and paid in full in cash, by check or other legal tender immediately and, if required to go to some other point or to the office of the in-dividual employer, the workmen shall be paid for time required to go to such places.

An employee who quits shall be mailed his pay in full by certified mail to his last known address within seventy-two (72) hours or be paid prior to leaving the job or project.

Any undue delay or loss of time caused the workmen through no fault of their own shall be paid for at the regular straight time wages by the individual employer causing such delay.

Accompanying each payment of wages shall be a separate statement identifying the individual employer, showing the total earnings, the amount of each deduction, the purposes thereof and net earnings.

If workmen are not paid by their individual employer during the usual working hours, they shall receive the applicable overtime rate for all time after the regular working hours that they are required by the individual employer to remain on the job site on such regular pay day. If workmen are not required to remain on the job site on the regular pay day, they shall receive four (4) hours pay at the appropriate overtime rate. Workmen, who through no fault of their own, are not paid on the regular pay day shall be paid waiting time for each hour of time they are required to wait on the next and each succeeding day at the regular straight time hourly rate, not to exceed eight (8) hours per day. Where an employee is still employed by the individual employer, waiting time shall be in addition to the employee's regular hourly rate.

(*Id.* at Exhibit A, pp. 32-33.)

### 6.    Non-Exhaustive List Of CBA Provisions Governing Other Terms and Conditions of Employment

The CBA provides for show up pay, timekeeping, and travel time, which are relevant to Plaintiff's minimum wage claim, among others:

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

13

NOTICE OF REMOVAL TO FEDERAL COURT

**Section 6-E. Works Hours Per Day:**

**Pre-Day Hire** - When the employer places an order for workmen during dispatch hours of the appropriate Local Union to report at the start of the next day's shift, (or later), such new hires shall be paid for actual hours worked on their first day of employment.

**Same Day Hire** - When the individual employer places an order for workmen on the same day the men are dispatched, for work and start work, by 10:00 a.m., (9:00 a.m. on 7:00 a.m. dispatched men) the workmen will be paid for a full day's work of eight (8) hours.

(*Id.* at Exhibit A, pg. 20.)

**Section 6-F. Works Hours Per Day:**

**Shift Work** - When two (2) shifts are employed, the first shift (morning shift) shall work up to eight (8) hours and shall be paid for each hour worked, or proportionate part thereof, the basic wage rate. The second shift shall work up to eight (8) hours and shall be paid for each hour worked, or proportionate part thereof, the basic wage rate plus a premium equal to 6% of the basic wage rate. When three (3) shifts are employed, the first shift (morning shift) shall work up to eight (8) hours and shall be paid for each hour worked, or proportionate part thereof, the basic wage rate. The second shift shall work up to eight (8) hours and shall be paid for each hour worked, or proportion-ate part thereof, the basic wage rate plus a premium equal to 6% of the basic wage rate. The third shift shall work up to eight (8) hours, and shall be paid for each hour worked, or proportionate part thereof, the basic wage rate plus a premium equal to 13% of the basic wage rate….

(*Id.* at Exhibit A, pp. 20-21.)

**Section 7-C. Wages Rates and Other Remuneration**

**Parking Fee** - In congested areas the individual employer shall provide, or pay for, parking facilities for workmen where free parking is not available within three (3) standard blocks of the job. Bona fide validated parking tickets must be submitted to the individual employer within fifteen (15) calendar days and paid within fifteen (15) calendar days of delivery of validated receipts.

**Section 7-E. Wages Rates and Other Remuneration**

**Tolls** - The individual employer shall pay all bridge and ferry tolls. Bona fide validated receipts must be submitted to the individual employer within fifteen (15) calendar days and paid within fifteen (15) calendar days of delivery of validated receipts.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

14

NOTICE OF REMOVAL TO FEDERAL
COURT

(*Id.* at Exhibit A, pg. 31.)

**SECTION 9. Expenses Out of Town.**

**J - "Show Up Expense"** - On jobs located outside the free zones, workmen who report for work and for whom no work is provided shall be paid a "show up" expense of $60.00 in addition to subsistence Mondays through Fridays. On Saturdays, Sundays and holidays "show up" expense will be based on the applicable overtime factor; provided that, to qualify for "show up" expense on any day the workman must remain at the job site for two (2) hours, available for work, unless released by the individual employer or his representative. If a workman is put to work he will be paid in accordance with Section 6-E.

(*Id.* at Exhibit A, pg. 36.)

The CBA provides for certain travel expenses and reimbursement, which are relevant to Plaintiff's expense reimbursement claim:

**SECTION 9. Expenses Out of Town.**

**A - Subsistence Pay** - Where a job is located 60 miles or more from the City Hall of San Francisco, Oakland, San Jose, Sacramento, Stockton, Fresno, Bishop, Bakersfield, Eureka, Redding, Napa, Los Angeles, San Diego, San Bernardino and Ventura of the State of California, and Reno and Las Vegas of the State of Nevada, a workmen will be compensated per scheduled work day for the job. Subsistence pay is determined by ascertaining the city hall enumerated above which is closest to the job. If the job is more than 60 miles from that city hall, subsistence shall be owed…

If a workman is shipped from one free zone into another free zone the workman shall be paid subsistence in accordance with Section 9A. The workman's initial free zone shall be the city hall listed above closest to his point of hire. For purposes of this paragraph the free zone shall be limited to the free zone closest to the point of hire.

Mileage will be the actual number of miles travelled over the most direct regularly travelled route between the job and the designated point. When an out-of-town job is of one day's du-ration, a workman shall be paid travel reimbursement to and from the job. He shall not, in addition, be paid subsistence.

This Subsistence Pay is not intended by the parties to be considered wages.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

**C - Travel Expense to Whom Due** - When an individual employer hires workmen for a job more than 60 miles away from the City Hall in those cities listed in Paragraph A, the workmen shall be paid travel reimbursement and subsistence, in accordance with the Agreement, whether or not the job is located within another expense free zone as provided by this Agreement. The individual employer shall pay bridge, ferry and toll road fares.

**D - Travel Reimbursement** - Travel reimbursement will be paid by the individual employer…Mileage will be the actual number of miles travelled over the most direct regularly travelled route between the job and the designated point. This Travel Reimbursement is not intended by the parties to be considered wages. Such payments shall be based on travel from the City Hall in those cities listed in Paragraph A. The workmen shall be paid a travel reimbursement at the beginning and completion of the job. This reimbursement is in addition to subsistence as provided in this Agreement.

**E - Company Transportation** - When safe company transportation with proper protection from the elements is provided, workmen will be paid travel reimbursement.

**F - Travel Reimbursement, Job Not Continuous** - If any individual employer orders the same workmen to and from the same job more than once when the job is not continuous, workmen shall be paid travel reimbursement to and from the job for each round trip.

**H - Expense Pay Each Day's Work** - Work-men eligible for subsistence shall be paid a single day's subsistence for any working day, whether more or less than eight (8) hours, or for work on Saturday, Sunday, or a holiday. No workman shall receive more than a single day's subsistence from a single individual employer for any one day worked.

**I - Adjacent Job Sites** - When workmen are transferred from one individual employer to another, without loss of time on same job or on an adjacent job, the original individual employer will not be required to pay the return travel reimbursement but the final individual employer will be required to pay the return travel reimbursement. The individual employer will notify the appropriate Local Union giving the names and Social Security Account numbers of workmen so transferred.

**Section 24. Basic Provisions.**

**E - Clothes Replacement** — Workmen re-quired to work in any area where they are exposed to acids, caustics or any similar

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

substances, which would cause damage to their clothing, shoes, gloves or tools, shall be provided protective clothing and equipment by the individual employer. Change time shall be done on the individual employer's time. If their clothing, gloves, shoes or tools are damaged, such items will be replaced by the individual employer.

(*Id.* at Exhibit A, pp. 33-36; *See also*, Section 24, Basic Provisions, pp. 53-54.)

### 7.    Grievance and Arbitration

The CBA calls for statutory Labor Code claims to proceed under its own grievance and arbitration provision:

#### Section 24-T. Basic Provisions:

An arbitrator presiding over an arbitration conducted pursuant to the Grievance Procedure shall have the authority to make an award of any and all remedies otherwise available under the California Labor Code, except for an award of penalties that would be payable to the Labor and Workforce Development Agency. All claims or disputes involving alleged violations of the Industrial Welfare Commission Wage Order 16, the California Labor Code, and the Fair Labor Standards Act, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq., as well as for associated penal-ties, not otherwise covered by the this Agreement, shall be subject to final and binding arbitration pur-suant to Section 28 of this Agreement, To the ex-tent permitted by law, all such claims or disputes shall be brought by or on behalf of the employee in their individual capacity only and not as a member of any purported class, collective or representative proceeding, any Arbitrator shall not have the authority to fashion a proceeding as a class, collective or representative action or to award relief to a group or class of employees in one arbitration proceeding. Nothing herein shall prohibit the parties from entering into an agreement to consolidate grievances before the Board of Adjustment hearing.

(*Id.* at Exhibit A, pg. 58.)

#### Section 6. Works Hours Per Day:

Nothing in this section confers any right or duty on the Department of Industrial Relations to resolve any dispute or assess any actual penalties for violations of this section. Any dispute regarding the provisions of this Section shall be subject to Section 28 Grievance Procedure of this Agreement.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

17

NOTICE OF REMOVAL TO FEDERAL COURT

(*Id.* at Exhibit A, pg. 19.)

**Section 28. Grievance Procedure:**

Boards of Adjustment shall be created for the settlement of disputes, except jurisdictional disputes, which shall be composed of two (2) representatives selected by the Union and two (2) representatives selected by the Employers. Members of a Board of Adjustment shall be affiliated neither with the Local Union or the individual employer involved in the specific grievance hearing. One of the two representatives selected by the Union shall be the President of the District Council of Iron Workers or his designated representative and the representatives of the individual signatory employers shall be selected by the Employers Association involved. It is agreed all individual employers covered by this Agreement will be represented by one of the Associations and such individual employers shall reimburse the Association selected, actual costs incurred in preparation for such representation.

(*Id.* at Exhibit A, pp. 63-64)

As shown below, each of these CBA provisions is relevant to show that Plaintiff's claims are subject to numerous Labor Code exemptions and thus, preemption under the LMRA applies to create federal question jurisdiction allowing for removal here.

## V.    LEGAL DISCUSSION

Plaintiff pleads nine causes of action, all of which involve wage and hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competitions Law ("UCL"). However, the majority of Plaintiff's non-derivative claims, namely his overtime, meal period, and rest break claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBA; California state law does not apply to such claims because of an express exemption in the Labor Code or Wage Order 16. Plaintiff's derivative claims (for wage statement penalties under Labor Code Section 226, waiting time penalties under Labor Code Section 203, and restitution under the UCL), are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime, meal period, and rest breaks claims; Plaintiff's minimum wage claim is preempted by Section 301 because the minimum wage claim is based on exactly the same alleged facts as the overtime claim. Plaintiff's expense reimbursement claim is preempted because the resolution that claim requires interpretation of the CBA. In the alternative, the Court has supplemental

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

18

NOTICE OF REMOVAL TO FEDERAL COURT

jurisdiction of these claims and any remaining claims, which form part of the same case or controversy as Plaintiff's preempted claims.

### A.    The Section 301 Preemption Analysis – Legal Standard

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements"). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987); *Allis-Chalmers*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988).  As articulated in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007), and as refined in *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019), the Ninth Circuit applies a two-step test to determine whether a claim is preempted under Section 301.

*Curtis* Step One. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis*, 913 F.3d 1152 (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the inquiry is resolved at this first step in favor of preemption. *See, e.g.,*

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF REMOVAL TO FEDERAL COURT

1    *Jones v. Sysco Ventura Inc.,* 2021 WL 6104193, *7 (C.D. Cal. Sep. 1, 2021); *Giles v. Canus Corp.*,

2    2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022).  For the reasons explained below, the vast majority

3    of Plaintiff's claims are preempted under Step One.

4         *Curtis* Step Two. If, and only if, there is no preemption found at the first step of the analysis,

5    courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a

6    plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153.

7    Under this second step, where there is no applicable collective bargaining agreement exemption,

8    preemption still applies if the resolution of a claim requires interpretation of the collective bargaining

9    agreement.  Here, as discussed below, Step Two comes into play in relation to Plaintiff's minimum

10   wage claim.  *See Mellon v. Universal City Studios, LLC*, 2022 WL 4021692, at *5 (C.D. Cal. Sep. 2,

11   2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *5 (N.D. Cal. Jan. 18, 2022); *Giles,*

12   2022 WL 3370793, *6. Step Two also comes into play in relation to Plaintiff's expense reimbursement

13   claim.  *See Rodriguez,* 2022 WL 161892, *4-5; *Linebarger v. Graphic Packaging International, LLC*,

14   2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020); *Gay v. Pac Steel Group,* 2023 U.S. Dist. LEXIS

15   164851, *20 (N.D. Cal. Sep. 15, 2023) ("*Gay II*").

16        Whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301

17   preemption analysis. *Curtis*, 913 F.3d at 1152; *Radcliff*, 519 F. Supp. 3d at 750; *Mellon*, 2022 WL

18   4021692, *2; *Ayon*, 2021 WL 4065716 *3.

19   **B.    Plaintiff's Second Cause Of Action (Overtime) Is Preempted Under *Curtis* Step**
20        **One.**

21        Plaintiff's Second Cause of Action alleges that Defendant failed to pay Plaintiff and the class

22   members overtime, and also includes a demand for relief under Labor Code Section 204.[5] (Compl., ¶

23   50.) However, Plaintiff has no state law overtime claim because the Labor Code Section 514

24   ───────────────────────────
     [5] To the extent Plaintiff is seeking relief pursuant to Labor Code Section 204, any claims predicated
25   on Labor Code sec. 204 is preempted. Labor Code Section 204 does not apply "when employees are
     covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code §
26   204(c). Thus, as is the case with overtime, meal and rest break claims, California state law wage
     payment claims under Section 204 are waivable and negotiable as to a union represented employee.
27   *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015)(holding Section
     204 claim preempted under Section 301 where CBA contained its own pay timing rules).

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

20                                                    NOTICE OF REMOVAL TO FEDERAL
                                                                          COURT

exemption applies. Section 514 provides an overtime exemption where "an employee is covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

In furtherance of the Legislature's explicit goal of protecting the collective bargaining system, the Section 514 overtime exemption has been construed and applied capaciously by state and federal courts. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (citing *Vranish*; quoting *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

First, the CBA provides for a range of wages, hours and working conditions. (*See* non-exhaustive list of provisions quoted in Section IV.B1, IV.B.2, IV.B.3, and IV.B.6, *supra*.)

Second, the CBA provides premium wage rates for all overtime hours worked. (*See* non-exhaustive list of provisions quoted in Section IV.B.2, IV.B.3, and IV.B.6, *supra*.)

Third, the CBA provides regular hourly rates of pay of not less than 30 percent more than the state minimum wage. (*See* non-exhaustive list of provisions quoted in IV.B.1, *supra*, Strass Decl. ¶¶ 8-9, Exhibit **B**, pp. 5, 9, 13-14, 19-20, 25-26, 31-32, 37-38.) The only CBA classification that has ever been below 130% of the minimum wage is a temporary classification, Apprentice-First Period, in job classifications or jurisdictions/zones inapplicable to Benson's union employees. (Strass Decl., ¶ 9.)

At all relevant times, Benson employees were subject to the wage rates outlined in the geographic zones entitled "Bay Area Counties,", "Zone 1," and "Zone 2" for the Journeyman job classification. (Strass Decl ¶¶ 8-9., Exhibit B, pp. 5, 9, 13-14, 19-20, 25-26, 31-32, 37-38**).** Benson did not employ individuals in any positions subject to the "Fence Erector" job classification. (Strass Decl., ¶9.) Further, Benson did not employ any individuals subject to the wage rates set forth in the

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

21

NOTICE OF REMOVAL TO FEDERAL COURT

geographic zones for California & Nevada, Zone 3, Zone, 4, and Zone 5. (*Id*.) Accordingly**,** Benson only employed individuals whose regular hourly rates of pay set forth under the CBA were not less than 130% of the state minimum wage. (Strass Decl., ¶¶ 8-9.) Thus, the 130% prong of the Labor Code Section 514 exemption is met. *See, e.g., Sachs v. Pankow Operating, Inc.*, 2022 WL 489696, *6-7 (C.D. Cal. Feb. 16, 2022); *Rodriguez v. USF Reddaway Inc.,* 2022 WL 18012518, *3-4 (E.D. Cal. Dec. 30, 2022); *Huerta v. Doubletree Emp. LLC*, 2024 WL 890548, *3 (C.D. Cal. Mar. 1, 2024).)

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g.*, *Giles*, *supra*, 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

### C.    Plaintiff's Claim for Minimum Wages Is Preempted Under *Curtis* Step One Or Step Two.

Plaintiff's minimum wage claim is preempted under either *Curtis* step one or two because it arises out of the preempted overtime claim *and* it substantially depends on the analysis of the CBA. *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837, 4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's preempted overtime claim, was also preempted under section 301); *see also Rodriguez*, *supra*, 2022 WL 161892, 6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, 6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra,* 2022 WL 4021692, 5 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks").

As discussed above, Plaintiff's overtime claim is preempted under *Curtis* Step One because of the presence of a CBA exemption under Labor Code Section 514. To substantiate his minimum wage claim, Plaintiff alleges that he worked off-the-clock during unlawful meal period practices and that he was subject to unlawful or inaccurate timekeeping practices (Compl., ¶¶ 15-16.)  Plaintiff does not

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

22

NOTICE OF REMOVAL TO FEDERAL COURT

1    allege that he ever worked *or was scheduled for* a single day as to which overtime obligations would

2    not attach (if Plaintiff had worked more time than that for which he was paid); *e.g.*, Plaintiff does not

3    allege that he ever worked only 7 hours in a day or only 35 hours in a week. (Compl.) In fact, Plaintiff

4    states that he and the putative class members were "scheduled to work 5 days in a workweek and at

5    least eight hours per day" and that he and the putative class members "regularly worked more than

6    eight (8) hours in a workday and more than forty (40) hours in a workweek." (Compl. ¶ 13).

7         Collectively, Plaintiff's allegations in his Complaint and the lack of any additional supporting

8    detail in the minimum wage claim make it clear that Plaintiff's so-called "minimum wage" claims are

9    in fact overtime claims. After all, as alleged, Plaintiff typically worked eight hours per day and 40

10   hours per week. Therefore, all allegedly unpaid time in excess of these hours would be overtime hours;

11   and Plaintiff's overtime claim is preempted by Section 301 for the reasons described above. Because

12   Plaintiff's overtime claim is preempted so, too, is his factually conjoined minimum wage claim. *See*

13   *Chavez v. Smurfit Kappa North America LLC*, 2018 WL 8642837, *4 (C.D. Cal. Oct. 17, 2018) (also

14   dealing with off-the-clock allegations, and holding that "because the unpaid minimum wages claim

15   can only arise out of Defendant's failure to pay overtime wages, the unpaid minimum wages claim is

16   also dismissed with prejudice."); *Thieroff v. Marine Spill Response Corp.*, 2022 WL 2965393, *4

17   (C.D. Cal. Jun. 6, 2022) ("Moreover, to the extent this [minimum wage off-the-clock] claim is

18   derivative of the overtime claim or is otherwise covered by the CBAs, it is preempted as discussed

19   above"). Thus, the First Cause of Action is preempted under *Curtis* Step One.

20         In addition, Plaintiff's First Cause of Action is preempted under *Curtis* Step Two because the

21   issue of timekeeping practices (an issue that is expressly part of plaintiff's off-the-clock claim) is

22   addressed in is addressed in Section 6-A (Hours of Work), Section-E (Work Day, Pre-Day Hire, and

23   Same Day Hire), and Section 6-F (Shift Work) of the CBA. Courts have consistently held that

24   minimum wage/off-the-clock claims are preempted when the CBA contains such provisions regarding

25   "show up pay" and pay for "actual hours worked." *See Rodriguez v. Gonsalves & Santucci, Inc.*, 2022

26   WL 161892, *5 (N.D. Cal. Jan. 18, 2022) (finding, where plaintiff alleged "defendant failed to pay

27   minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t

28   minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'");

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

23                                    NOTICE OF REMOVAL TO FEDERAL
                                      COURT

*Giles*, *supra*, 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of CBA terms "actual time worked" and "show-up pay").

For either or both of these reasons, Plaintiff's First Cause of Action is preempted.

### D.   Plaintiff's Meal Break Claim Is Preempted Under *Curtis* Step One.

Plaintiff's Third Cause of Action alleges the failure to provide meal breaks under California law. (Compl., ¶¶ 51-54.) However, Plaintiff has no state law meal break claims because the Labor Code Section 512(e) exemption applies. As is relevant here, the Section 512(e) exemption applies because Plaintiff: (i) was employed in a construction occupation (*See* CBA, Strass Decl., Exhibit A, Section 3. Craft Jurisdiction, pp.3-7; Labor Code Section 512(f)(1)); and (ii) was covered by a CBA that (a) expressly provides for a range of wages, hours and working conditions (*See* non-exhaustive list of provisions quoted in Section IV.B1, IV.B.2, IV.B.3, and IV.B.6, *supra*), (b) expressly provides for meal periods (*See* non-exhaustive list of provisions quoted in Section IV.B.4) (c) provides final and binding arbitration of disputes concerning all provision of the CBA (including the CBA's meal period provisions) (*See* non-exhaustive list of provisions quoted in Section IV.B.7), (d) provides premium wage rates for all overtime hours worked (*See* non-exhaustive list of provisions quoted in Section IV.B.2) and (e) provides a regular hourly rate of pay of not less than 30% more than the state minimum wage (see discussion in Section V.B. above of 130% prong in relation to Labor Code Section 514 exemption).

The meal break CBA exemption in Labor Code Section 512(e) has, like the Section 514 exemption, been construed broadly by the courts with an eye toward the Legislature's goal of protecting the collective bargaining process. In the seminal case, *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal. App. 4th 227, 230, 237-38 (2014), the Court of Appeal (affirming the superior court's order), held that the Section 512(e) exemption was met where the underlying CBA simply provided that "shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work hours and shall not be allowed additional time therefore at Company expense" (i.e., even where the CBA did not provide a precise duration or timing for meal periods). Where the Section 512(e) exemption is met, the exempted-from state law provision (in this case, meal periods), "as a whole," does not apply. *Id.* at 236.

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

24

NOTICE OF REMOVAL TO FEDERAL COURT

Further, where, as here, the Section 512(e) exemption applies, a pleaded state law meal period claim is preempted by Section 301. *See Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, \*4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1155-56); *accord Giles*, *supra*, 2022 WL 3370793, \*4-5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014) ("So if Section 512(e) applies, then 512(a) does *not* apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law.") (Emphasis in original).

**E.    Plaintiff's Rest Break Claim Is Preempted Under *Curtis* Step One.**

Plaintiff's Fourth Cause of Action alleges failure to provide rest breaks under California law. (Compl., ¶¶ 55-57.)  However, as is the case with his prior causes of action, Plaintiff's rest break claim is preempted by Section 301 if an applicable CBA exemption applies. *See Rodriguez, supra,* 2022 WL 161892, \*4; *Zayerz v. Kiewit Infrastructure W.*, 2018 WL 582318, \*4 (C.D. Cal. Jan. 18, 2018).

In the applicable Wage Order (Wage Order 16), there are two potentially applicable rest break CBA exemptions, at Sections 11.D and 11.E, respectively. The Section 11(D) CBA exemption applies here and reads as follows: "In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail." Cal. Code Regs., Title 8, Section 11160(11)(D).

Here, Section 24-T of the CBA expressly provides a final and binding arbitration mechanism for the resolution of disputes regarding rights arising under Wage Order 16, specifically including all such rights that are subject to a CBA exemption (such as rest breaks). Thus, the CBA prevails under Section 11(D) of Wage Order 16. *Thieroff*, 2022 WL 2965393, \*5; *Rodriguez, supra,* 2022 WL 161892, \*4; *Zayerz v. Kiewit Infrastructure W.*, 2018 WL 582318, \*4 (C.D. Cal. Jan. 18, 2018).

**F.    Plaintiff's Derivative Claims for Waiting Time Penalties, Wage Statement Penalties and UCL Claims Are Preempted Under *Curtis* Step One.**

Plaintiff's Fifth Cause of Action (waiting time penalties under Labor Code Sections 201-203), Sixth Cause of Action (wage statement penalties under Labor Code Section 226), and Ninth Cause of Action (restitution under UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. (Compl., ¶¶ 59-65, 66-73, and erroneously numbered 10-14 (pg. 20), respectively [all three derivative claims are based, without

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

25                    NOTICE OF REMOVAL TO FEDERAL
COURT

differentiation, on all allegations in Paragraphs 1-58 of the Complaint].) All three derivative claims are preempted under Section 301 for this reason. *Giles*, supra, 2022 WL 3370793, *6-7; *Rodriguez*, *supra*, 2022 WL 161892, *6; *Mellon*, *supra*, 2022 WL 4021692, *5; *Jimenez v. Young's Mkt. Co.,* 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am.,* 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

Notably, Plaintiff's claim for wages at termination would be preempted under Section 301 in any event, under Step Two of the *Curtis* analysis, because such claims require the interpretation and application of detailed provisions regarding the timely payment of wages to both current and departing employees (including penalties for late payments) in Section 8 (Pay Day) of the CBA. *See Curtis*, 913 F.3d at 1153. But the Step Two analysis is unnecessary where, as here, preemption under Step One is so clear.

### G.    Plaintiff's Claim For Expense Reimbursement Is Preempted Under *Curtis* Step Two.

In support of his Seventh Cause of Action under Labor Code Section 2802, Plaintiff alleges that Defendant failed to reimburse Plaintiff and the putative class members "costs related to use of personal phones, work attire, and gas, and mileage for personal vehicles." (Compl., ¶ 20.) The body of the Ninth Cause of Action adds no supporting detail. (*Id.* at ¶¶ 10-14, (erroneously numbered at pg. 20).)

Courts routinely find expense reimbursement claims preempted where (i) a union-represented plaintiff makes general, non-specific expense reimbursement allegations and (ii) the applicable CBA contains a range of specific provisions regarding expense reimbursement. *See Rodriguez, supra,* 2022 WL 161892, *4-5; *Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020); *Gay v. Pac Steel Group,* 2023 U.S. Dist. LEXIS 164851, *20 (N.D. Cal. Sep. 15, 2023). The preemption argument is even stronger where the CBA contains provisions that touch on the specifics of the alleged expense reimbursement issue. *See Linebarger*, 2020 WL 1934958, *6 (Section 301 preemption applied to cell phone expense reimbursement claim where CBA included language regarding the purchase of *tools* necessary to complete the work, given that cell phone allegation required showing that cell phone was a necessary work tool).

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

26                                    NOTICE OF REMOVAL TO FEDERAL
COURT

The specifics of what reimbursements Plaintiff is claiming is general and non-specific – i.e., is Plaintiff alleging he was required to use his personal cell phone to understand when he was supposed to report to work, running late, or was he required to use his cell phone to record time worked? Similarly, is plaintiff claiming he was forced to drive his personal vehicle to worksites outside a certain geographic area, between jobsites, or for some other unknown purpose. Is Plaintiff claiming Defendant should have paid for specific work attire, such as steel-toed boots, or to replace his damaged work attire. If Plaintiff's expense reimbursement claim relates to subsistence pay, travel reimbursement, clothing, or communications related to work schedules, these claims are addressed by in numerous provisions through the CBA. (*See* Strass Decl., Exhibit A.) For example, Section 24-E provides that in certain circumstances that "clothing, gloves, shoes or tools" that are damaged due to "caustic substances" will be replaced by the individual employer. How is "caustic substance" defined? What "tools" will be replaced? Similarly, the plethora of sections in the CBA that reference travel and expense reimbursement raise a multitude of questions that cannot be answered without interpretation of the CBA.

Accordingly, assuming that Plaintiff is eventually able to state a claim for expense reimbursement, the CBA specifically addresses expense reimbursement in several provisions and, thus, Section 301 preemption applies because the CBA must be interpreted to resolve the claim. *See Rodriguez*, *supra*, 2022 WL 161892, * 9 (Section 2802 claim preempted because the resolution thereof "turns on the analysis of the CBA and interpretation of its terms"); *Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020) (finding Section 301 preemption of cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work); *Gay v. Pac Steel Group,* 2023 U.S. Dist. LEXIS at *20 (N.D. Cal Sept 15, 2023) (applying LMRA 301 preemption and holding that the CBA would need to be interpreted in order to decide [Plaintiff's] unreimbursed business expense claim). In the alternative, this Court has supplemental jurisdiction over Plaintiff's expense reimbursement claim.

## H.    Alternatively, Supplemental Jurisdiction Permits Removal of All Remaining Claims.

To the extent there are certain claims alleging Labor Code violations that do not arise under

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

27

NOTICE OF REMOVAL TO FEDERAL COURT

Section 301 of the LMRA, including Plaintiff's Eighth Cause of Action For Failure to Produce Employment Records, those alleged violations remain within the *supplemental* jurisdiction of the Court under 28 U.S.C. section 1367(a) in that they are so related to the federal cause of action that they form part of the same case or controversy under Article III of the United States Constitution. *See Giles*, *supra,* 2022 WL 3370793, 6 (court exercised supplemental jurisdiction over non-preempted rest break claim by non-construction industry plaintiff, where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez*, LLC 2021 WL 5999082 *21 (exercising supplemental jurisdiction because the plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages "arose from the same working conditions and relationship" with the defendants during the same period as the plaintiffs' overtime and meal period claims). Thus, this action is removable in its entirety.

## VI.    CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of San Francisco, to the United States District Court, Northern District of California. Defendant requests that this Court retain jurisdiction for all further proceedings.

Dated: December 5, 2024                          LITTLER MENDELSON P.C.


                                                 */s/ Jyoti Mittal*
                                                 Jyoti Mittal
                                                 James Payer
                                                 Joy Cho

                                                 Attorneys for Defendant
                                                 BENSON INDUSTRIES, INC.

4869-8073-4453.5 / 106323-1022

LITTLER MENDELSON P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

28          NOTICE OF REMOVAL TO FEDERAL COURT